**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| HAMZA RAMZAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>GDS HOLDINGS LIMITED, WILLIAM WEI HUANG, and DANIEL NEWMAN,<br><br>Defendants. | Case No.: 4:18-cv-539<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Hamza Ramzan ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding GDS Holdings Limited ("GDS Holdings" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded securities from March 29, 2018 and July 31, 2018, inclusive (the "Class

Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.     In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased GDS Holdings securities during the Class Period and was economically damaged thereby.

7.     Defendant GDS Holdings, together with its subsidiaries, purports to design, build, and operate data centers in the People's Republic of China. GDS Holdings is incorporated in the Cayman Islands and had principal executive offices in the People's Republic of China. GDS Holdings' common stock trades on the NASDAQ under the ticker symbol "GDS."

8.      Defendant William Wei Huang ("Huang") is the Company's founder, Chairman of the Board of Directors, and has served as the Company's Chief Executive Officer ("CEO") since 2002.

9.      Defendant Daniel Newman ("Newman") has served as the Company's Chief Financial Officer ("CFO") since September 2011.

10.     Defendants Huang and Newman are collectively referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

3

12.     GDS Holdings is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to GDS Holdings under *respondeat superior* and agency principles.

14.     Defendants GDS Holdings and the Individual Defendants are collectively referred to herein as "Defendants."

**SUBSTANTIVE ALLEGATIONS**
**Materially False and Misleading**
**Statements Issued During the Class Period**

15.     On March 29, 2018, GDS Holdings filed a Form 20-F with the SEC, which provided its financial results and position for the fiscal year ended December 31, 2017 (the "2017 20-F"). The 2017 20-F was signed by Defendant Huang. GDS Holdings stated there were no changes in its "internal control over financial reporting that occurred during the period covered by this annual report that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting."

16.     The 2017 20-F contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Huang and Newman attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud.

17.     In the 2017 20-F, GDS Holdings announced the effects of acquisitions of a data center project in Shenzhen China named "SZ5," and a data center project in Guangzhou, China named "GZ2," stating in relevant part:

### Effect of Acquisition of SZ5

On June 29, 2017, we consummated an acquisition of all the equity interests in a target group from a third party for an aggregate contingent purchase price of RMB312.0 million (US$48.0 million), of which RMB69.8 (US$10.7 million) was paid as of December 31, 2017. As of December 31, 2017, we expected that all specified conditions would be met and we would be obligated to settle the full amount of the purchase price under the share purchase agreement of RMB312.0 million (US$48.0 million). The target group owns a data center project in Shenzhen, China. As of the date of the acquisition, the data center had just commenced its operations. After the acquisition, this target group had a net revenue of RMB42.1 million (US$6.5 million) and a net loss of RMB23.9 million (US$3.7 million) for the period from June 30, 2017 to December 31, 2017, which is included in our results of operations for the year ended December 31, 2017.

### Effect of Acquisition of GZ2

On October 9, 2017, we consummated an acquisition of all the equity interests in a target group from a third party for an aggregate cash consideration of RMB234.0 million (US$36.0 million), of which RMB184.2 (US$28.3 million) was paid as of December 31, 2017. The target group owns a data center project in Guangzhou, China. As of the date of the acquisition, the data center was fully operational. After the acquisition, this target group had a net revenue of RMB26.6 million (US$4.1 million) and a net income of RMB2.7 million (US$0.4 million) for the period from October 10, 2017 to December 31, 2017, which is included in our results of operations for the year ended December 31, 2017.

18.     The statements contained in ¶¶15-17 was materially false and/or misleading because the Company misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) GDS Holdings overstated the value of certain data centers it had acquired; (2) GDS Holdings failed to maintain adequate internal controls; (3) as a result, Defendants' statements about its business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis at all relevant times.

## THE TRUTH EMERGES

19.     On July 31, 2018, *Blue Orca Capital* published a report stating, among other things, that GDS inflated the purchase price of undisclosed related party acquisitions of various data centers. The report stated, in relevant part:

> GDS Holdings Limited ("GDS" or the "Company") is a US-listed developer and operator of data centers in China. GDS's stock was up 400%+ in the last year until a recent pullback. Measured off its July 2018 highs, GDS was valued at an absurd 80x EV/ TTM EBITDA, even though its interest payments now exceed its reported gross profits. Investors have indulged GDS's staggering debt burden because of the belief in its supposedly impressive growth.
>
> But our research indicates that in reality, GDS is borrowing crippling amounts of debt to enrich insiders by acquiring data centers from undisclosed related parties which are not nearly as valuable as the Company claims. We believe that since becoming a public Company, GDS has borrowed recklessly to siphon off at least **RMB 696 million** to insiders by inflating the purchase price of undisclosed related party acquisitions.
>
> *     *     *
>
> 2.  **Inflating the Purchase Price of Undisclosed Related Party Acquisitions**. Our due diligence of SAIC filings and other publicly available information databases in the PRC indicates (in our opinion) that in 3 of GDS's 4 major post-IPO transactions, GDS not only acquired data centers from undisclosed related parties, but overstated the purchase price of such acquisitions in its SEC filings. In our opinion, this is a near textbook case of independent evidence showing that unscrupulous insiders looted RMB 696 million from the public Company. We note that such transactions took place **only months after GDS's IPO**, indicating, in our opinion, that GDS was eager to transfer newly raised public money to insiders. This behavior is reminiscent of the worst offenders of the China-Hustle era of 2010-2011.
>
> > **a. Shenzhen 5 Data Center Acquisition**. In June 2017, GDS supposedly purchased Shenzhen Yaode Data Services ("Shenzhen Yaode"), which operates a Shenzhen datacenter ("SZ5"), for RMB 312 million from a "third party." However, publicly available SAIC filings show that two GDS employees also served as the acquisition target's (Shenzhen Yaode's) director and supervisor **prior to the acquisition**. Put simply, we found the same individuals on both sides of the transaction, indicating that this was an undisclosed related party acquisition from sellers secretly connected to GDS. Furthermore, publicly available SAIC filings in China state that the true purchase price of the transaction was only RMB 500,000, not RMB 312 million as the Company stated in its SEC filings.

We believe that GDS overstated the purchase price by **624x** and presume that insiders likely looted part or all of the difference.

**b. Weiteng Network (Guangzhou 2) Data Center Acquisition**. In October 2017, GDS acquired Guangzhou Weiteng Network Technology, which owned a data center in Guangzhou ("GZ2"), supposedly for RMB 234 million. Yet Weiteng Network's SAIC filings state that it was sold to GDS for only RMB 72 million, **indicating that GDS inflated the reported value of the acquisition in its SEC filings by 3.25x!** Furthermore, GDS failed to disclose that Weitang Network and its datacenter (GZ2) was built and owned by Shenzhen Ningguanghong Technology ("SNT"). SNT's filings, available in the PRC, stated that the fair value of Weiteng Network and its data center was only RMB 70.4 million and that the PP&E value of the project was only RMB 168 million, not RMB 320 million as GDS claimed in its SEC filings. Such filings indicate, in our opinion, that GDS not only overstated the purchase price of the acquisition, but also inflated the value of the acquired PP&E. Furthermore, we found a number of overlapping connections prior to the acquisition between GDS, the acquisition target and its sellers, **including common registered phone numbers and email addresses**. Entities with the same registered email addresses and phone numbers, in our view, are likely connected through common ownership or control; and such connections indicate that the acquisition was an undisclosed related party transaction.

\*       \*       \*

(Emphasis in original.)

20.     On this news, shares of GDS Holdings fell $12.92 per share or over 37% to close at $21.83 per share on July 31, 2018.

21.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired GDS Holdings securities publicly traded on NASDAQ during the Class Period,

and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of GDS Holdings, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

23.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, GDS Holdings securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

24.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

25.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

26.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition and business GDS Holdings;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused GDS Holdings to issue false and misleading SEC filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and SEC filing

- whether the prices of GDS Holdings' securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

27.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

28.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- GDS Holdings shares met the requirements for listing, and were listed and actively traded on NASDAQ, a highly efficient and automated market;

- As a public issuer, GDS Holdings filed periodic public reports with the SEC and NASDAQ;

- GDS Holdings regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- GDS Holdings was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

29.     Based on the foregoing, the market for GDS Holdings securities promptly digested current information regarding GDS Holdings from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

30.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

## COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

31.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32.     This Count is asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

10

33.     During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

34.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of GDS Holdings securities during the Class Period.

35.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of GDS Holdings were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of GDS Holdings, their control over, and/or receipt and/or modification of GDS Holdings allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning GDS Holdings, participated in the fraudulent scheme alleged herein.

11

36.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other GDS Holdings personnel to members of the investing public, including Plaintiff and the Class.

37.     As a result of the foregoing, the market price of GDS Holdings securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of GDS Holdings securities during the Class Period in purchasing GDS Holdings securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

38.     Had Plaintiff and the other members of the Class been aware that the market price of GDS Holdings securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased GDS Holdings securities at the artificially inflated prices that they did, or at all.

39.      As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

40.     By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of GDS Holdings securities during the Class Period.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

41.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

42.     During the Class Period, the Individual Defendants participated in the operation and management of GDS Holdings, and conducted and participated, directly and indirectly, in the conduct of GDS Holdings' business affairs. Because of their senior positions, they knew the adverse non-public information about GDS Holdings' misstatement of revenue and profit and false financial statements.

43.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to GDS Holdings' financial condition and results of operations, and to correct promptly any public statements issued by GDS Holdings which had become materially false or misleading.

44.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which GDS Holdings disseminated in the marketplace during the Class Period concerning GDS Holdings' results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause GDS Holdings to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of GDS Holdings within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of GDS Holdings securities.

45.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by GDS Holdings.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under

Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class

representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by

reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-

judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 2, 2018                          Respectfully submitted,

**STECKLER GRESHAM COCHRAN PLLC**

*/s/ L. Kirstine Rogers*
L. Kirstine Rogers
Texas Bar No. 24033009
Dean Gresham
Texas Bar No. 24027215
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Telephone: (972) 387-4040
Facsimile: (972) 387-4041
Email: krogers@stecklerlaw.com
Email: dean@stecklerlaw.com

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (to be admitted *PHV*)
Phillip Kim, Esq. (to be admitted *PHV*)
275 Madison Avenue, 34th Floor
New York, NY 10016
Telephone: (212) 686-1060

Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
Email: pkim@rosenlegal.com

**COUNSEL FOR PLAINTIFF**