IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| HAMZA RAMZAN, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiffs, | § § | CIVIL NO. 4:18-CV-539-ALM-KPJ |
| v. | § § | |
| GDS HOLDINGS LIMITED, WILLIAM WEI HUANG, and DANIEL NEWMAN, | § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss the Amended Complaint and Alternatively, to Transfer Venue to the Southern District of New York, and Memorandum of Law in Support (the "Motion") (Dkt. 24). In accordance with the provisions of 28 U.S.C. 636(c), the parties consented to proceed before the undersigned for the limited purpose of deciding the Motion. *See* Dkt. 37. For the reasons set forth below, the Motion is **GRANTED**.

I.     **BACKGROUND**

Plaintiff Hamza Ramzan, a New York resident, initially commenced this action; on October 26, 2018; the Court subsequently appointed Yuanli He, a California resident, as Lead Plaintiff.[1] *See* Dkts. 1, 20, 21, 24-8 at 5. Yuanli He filed the operative Complaint on behalf of himself and other persons or entities who acquired GDS Holdings Limited ("GDS") securities publicly traded on the NASDAQ from March 29, 2018, through July 31, 2018 ("Plaintiffs"), against GDS, William Wei Huang ("Huang"), and Daniel Newman ("Newman") (collectively,

---

[1] Plaintiff Michael Zollo, an Illinois resident, is also a named Plaintiff. *See* Dkt. 24 at 16.

1

"Defendants"), asserting violations of the Securities Exchange Act of 1934 (the "Exchange Act"). *See* Dkt. 21 at 2. GDS is a Cayman Islands corporation headquartered in the People's Republic of China, where it purports to develop and operate data centers. *See id.* at 7. Huang is GDS's founder, Chairman of the Board of Directors, and Chief Executive Officer, and Newman is GDS's Chief Financial Officer. *See id*. Both Huang and Newman reside in Hong Kong. *See* Dkt. 24 at 9.

In the Motion, Defendants argue: (1) Defendants have no contacts with Texas that would permit the Court to exercise personal jurisdiction over them; (2) venue in the Eastern District of Texas is improper; (3) the case should alternatively be transferred to the Southern District of New York; and (4) the case should be dismissed for failure to state a claim. *See* Dkt. 24. Plaintiffs filed a response (Dkt. 31) and Defendants filed a reply (Dkt. 33). The Court held a hearing on the Motion on September 16, 2019 (the "Hearing"). At the Hearing, Plaintiffs raised an additional basis on which to establish personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2). The Court ordered further briefing on the matter. *See* Dkts. 38, 39, 40, 43.

## II.     LEGAL STANDARD

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss the claims presented if it does not have personal jurisdiction over the defendant. *Holmes v. New Logic Business Loans Inc.*, 2015 WL 12748311, at *1 (E.D. Tex. Oct. 7, 2015); FED. R. CIV. P. 12(b)(2). "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the party asserting jurisdiction is required to present facts sufficient to constitute a *prima facie* case of personal jurisdiction to satisfy its burden." *Duke Energy Int'l, L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 678 (S.D. Tex. 2010) (citing *Central Freight Lines Inc. v. APA Transport Corp.*, 322 F.3d 376, 380 (5th Cir. 2003); *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 214 (5th

2

Cir. 2000)). "[O]n a motion to dismiss for lack of jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a *prima facie* case for personal jurisdiction exists." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).

### B. Rule 12(b)(3)

Federal Rule of Civil Procedure 12(b)(3) allows a party to move to dismiss an action for "improper venue." FED. R. CIV. P. 12(b)(3). Once a defendant raises improper venue by motion, "the burden of sustaining venue will be on [the] Plaintiff." *Cincinnati Ins. Co. v. RBP Chem. Tech., Inc.*, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008). "Plaintiff may carry this burden by establishing facts that, if taken to be true, establish proper venue." *Id.* (citations omitted). The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings, Inc.*, 2014 WL 978685, at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclib, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)). In determining whether venue is proper, "the Court may look beyond the complaint to evidence submitted by the parties." *Ambraco*, 570 F.3d at 238. If venue is improper, the Court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

### III. ANALYSIS

#### A. Venue

Plaintiffs assert that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) ("Section 1391") and Section 27 of the Exchange Act (15 U.S.C. § 78aa) ("Section 27"). Under Section 1391, the general venue statute, "for all venue purposes . . . a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3). Section 27's venue

3

provision reads: "Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa.

   1. Section 27

Outside of the solitary reference to the statute in their Amended Complaint, Plaintiffs make no attempt to demonstrate that venue is appropriate under Section 27. Rather, Plaintiffs state in one footnote in their response to the Motion, "Courts have also held that venue could be established under Section 27 for any publicly-traded company on the NASDAQ, such as GDS." Dkt. 31 at 23. The only case cited for this general proposition contains one statement, in dicta, that it is "theoretically" possible venue could exist in any district under Section 27 due to the NASDAQ listing. *See id.* (citing *In re Geopharma, Inc.*, No. 04 CIV. 9463 (SAS), 2005 WL 1123883, at *1 n.12 (S.D.N.Y. May 11, 2005)) ("Indeed, because GeoPharma was a publicly traded company on the NASDAQ National Market and the alleged misstatements were widely disseminated and defrauded a nationwide class, plaintiffs could theoretically have brought suit under section 27 in any district in the United States."). The Court has not found, and Plaintiffs have not cited, any case in which the NASDAQ listing alone established venue under Section 27. In fact, courts require action by a defendant that "reaches into" the forum district that is "of material importance" to the consummation of the alleged violation. *See GRM v. Equine Inv. & Mgmt. Grp.*, 596 F. Supp. 307, 312 (S.D. Tex. 1984) (citing *Hilgeman v. Nat'l Ins. Co. of Am.*, 547 F. 2d 298, 301 (5th Cir. 1977)). Notably. Plaintiffs not only abandon but entirely contravene their previously pled position regarding Section 27 in their supplemental briefing. *See* Dkt. 40 at 8 ("The Court should find that the existence of Section 27 of the Exchange Act, a situation-specific federal statute granting

4

jurisdiction to other courts, is irrelevant the Rule 4(k)(2) analysis because it does not grant jurisdiction to this Court."). Plaintiffs have not pled any such facts in this case, and therefore, Plaintiffs have not demonstrated that venue is proper herein under Section 27.

2. Section 1391

Plaintiffs argue venue is proper under the general venue statute, Section 1391, as Section 1391 applies even when a cause of action has a particular, restrictive venue statute. S*ee* Dkt. 31 at 18. In *Brunette Mach. Works, Ltd. v. Kockum Indus., Inc.*, the Supreme Court held that Section 1391 is "properly regarded" as a "declaration of the long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws, general and special." 406 U.S. 706, 714 (1972). Defendants recognize the "long-established rule," but argue that because Section 1391 was amended in 2011, there is no reason to interpret the statute as applying differently for alien defendants than for domestic defendants. *See* Dkt. 24 at 22.

In *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, the Supreme Court addressed the relationship of Section 1391 and the patent venue statute, 28 U.S.C. § 1400(b), in cases involving domestic defendants. 137 S. Ct. 1514 (2017). The Supreme Court explained their findings <u>related only</u> to domestic defendants:

> The parties dispute the implications of petitioner's argument for foreign corporations. We do not here address that question, nor do we express any opinion on this Court's holding in *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.*, 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972) (determining proper venue for foreign corporation under then existing statutory regime).

*Id.* at 1519, n.2. The Federal Circuit recently addressed whether the ruling in *TC Heartland* contravened the "long-established rule that suits against aliens are wholly outside the operation of all the federal venue laws," as stated in *Brunette. See In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018). In *In re HTC*, a Taiwanese company headquartered in Taiwan contended venue was not

5

proper in the District of Delaware, and the 2011 amendments to Section 1391 (the "savings clause") meant the express venue statute for patent cases governs and displaces Section 1391. The Federal Circuit ruled that, despite the existence of a patent venue statute, "the 2011 amendments do not sufficiently indicate an intent to make venue protections applicable to alien defendants," and the Supreme Court's "decision in *TC Heartland* does not alter" the conclusion in *Brunette* that when § 1391(d) was codified in 1948, "Congress was apparently quite content to leave suits against alien defendants exempt from the venue statutes, in patent cases as in all others." *Id.* at 1356–57.

In this District, Chief Judge Gilstrap recently applied the finding in *In re HTC*, holding, "BIScience, as a foreign corporation, is subject to suit in any judicial district for venue purposes." *Luminati Networks Ltd. v. BIScience Inc.*, No. 2:18-CV-483-JRG, 2019 WL 2084426, at *7 (E.D. Tex. May 13, 2019). Likewise, the Court finds that the "long-established rule" holds true, such that neither general nor special venue laws apply to alien defendants. Accordingly, as GDS, Huang, and Newman reside outside of the United States, venue is proper pursuant to Section 1391 in any district, including the Eastern District of Texas.

### B. Personal Jurisdiction

1. Section 27

Plaintiffs argue the Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question), and Section 27 of the Exchange Act (15 U.S.C. §78aa). *See* Dkt. 21 at 6.[2]

In the Fifth Circuit, a court may assert personal jurisdiction over a defendant in two distinct ways. A court may find personal jurisdiction when a plaintiff demonstrates the defendant had

---

[2] This was Plaintiffs' position up to, and until, the final paragraph of their improperly filed supplemental reply brief, wherein Plaintiffs reversed their previously pled position on Section 27. *See* Dkt. 40 at 8 ("The Court should find that the existence of Section 27 of the Exchange Act, a situation-specific federal statute granting jurisdiction to other courts, is irrelevant to the Rule 4(k)(2) analysis because it does not grant jurisdiction to this Court.").

6

minimum contacts with the forum state, such that bringing a defendant into courts of that state is consistent with the dictates of due process, and with the requisites of the particular state's long-arm jurisdiction statute. *See, e.g., Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777 (5th Cir. 1986). In cases arising under federal question jurisdiction, a second pathway to personal jurisdiction may be available through a federal statutory grant of jurisdiction. *See Submersible Systems v. Perforadora Central*, 249 F.3d 413, 418 (5th Cir. 2001) ("Absent a federal statute that provides for more expansive personal jurisdiction, the personal jurisdiction of a federal district court is coterminous with that of a court of general jurisdiction of the state in which the district court sits."). Section 27 is one such statute. Where venue is proper under Section 27, the statute allows service of an alien defendant anywhere in the United States, provided it has minimum contacts with the United States. *See vanHooydonk v. MediPhysics, LLC,* No. 3:07-cv-286, 2007 WL 9717518, at *3 (N.D. Tex. June 15, 2007).

Defendants contend even if the Court finds that Plaintiffs could establish venue pursuant to Section 1391, the action should be dismissed for lack of personal jurisdiction because Plaintiffs may not avail themselves of the service of process provision in Section 27. *See* Dkt. 24 at 23. As previously discussed, Plaintiffs do not rely on Section 27 to establish proper venue, and do not plead any facts sufficient to demonstrate venue is proper under Section 27. Plaintiffs, instead, employ a "mix and match" approach, claiming venue is proper under Section 1391, and rely on Section 27 as their sole means for establishing personal jurisdiction. Section 27 reads, in relevant part:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found.

15 U.S.C. § 78aa.

Defendants assert Section 27's service of process provision is applicable only in cases in which venue is appropriate under Section 27, as it is "clear from the face of the statute, given that the service of process language applies only 'in such cases,' referencing cases that satisfy Section 27's venue requirements." *See* Dkt. 24 at 23.

The Court recognizes that a circuit split exists on this issue, and the Fifth Circuit has yet to make a definitive ruling. The Ninth Circuit and district courts in the Third Circuit, for example, have supported the "mix and match" approach. *See Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir. 1989); *see also Isostatic Graphite Antitrust Litig.*, No. 00-CV-1857, 2002 WL 31421920, at *2 (E.D. Pa. Sept. 19, 2002) ("It is unlikely that Congress intended aliens to be made more difficult to sue when it drafted § 12 of the Clayton Act, and therefore, at least on these facts, a national contacts test is appropriate.").[3]

The D.C. Circuit, Second Circuit, and Seventh Circuit, however, take what appears to be the majority approach, finding in cases addressing the analogous provisions of Section 12 of the Clayton Act, a suit must satisfy the specific venue provisions of the statute, not Section 1391, before the court can apply the statute's nationwide service of process clause. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000); *Goldlawr, Inc. v. Heiman*,

---

[3] The issue before the Court is more frequently litigated in connection to near identical language of Section 12 of the Clayton Act ("Section 12"). *See* 12 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."); *compare with* Section 27 (15 U.S.C. § 78aa) ("Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found."); s*ee also vanHooydonk*, 2007 WL 9717518, at *5 (recognizing Section 12 as "analogous" to Section 27, and relying on case law analyzing the Clayton Act to interpret Section 27).

288 F.2d 579, 581 (2d Cir. 1961). That is, the venue and nationwide service provisions of the statute must be read as a "package deal." *See KM Enters., Inc. v. Glob. Traffic Techs., Inc.*, 725 F.3d 718, 730 (7th Cir. 2013);[4] *see also In re Polyester Staple Antitrust Litig.*, No. 3:03-CV-1516, 2008 WL 906331, at *8 (W.D. N.C. Apr. 1, 2008) (finding "the venue provision within Section 12 must be satisfied before worldwide service of process is authorized"). Moreover, in a case raising the same issue under analogous provisions of the Clayton Act, Chief Judge Lynn of the Northern District of Texas convincingly found that the mix and match approach would allow a corporation having minimum contacts with the Unites States to be sued in any district—an extremely broad reading of the comparable statute that the court found to be contrary to the plain meaning of the statute. *See Mgmt. Insights v. CIC Enters., Inc.*, 194 F.Supp.2d 520, 530-33 (N.D. Tex. 2001); *see also vanHooydonk*, 2007 WL 9717518, at *5 (applying the same logic in a Section 27 case). Likewise, the Court finds the "package deal" approach to be more reasonable in light of the plain meaning of the statute.

Plaintiffs argue "suits against foreign defendants are outside of the scope of all venue laws." Dkt. 31 at 22. The Court is unconvinced that Section 27 should be interpreted differently based on whether the defendant in question is an alien defendant or a domestic defendant. Neither the statute at issue, nor the majority of case law, supports such a distinction. *See, e.g., In re Vitamins Antitrust Litig.*, 94 F.Supp.2d. 26, 30 (D.D.C. 2000); *Dennis v. JPMorgan Chase & Co.*, 343 F.Supp.3d 122, 198 (S.D.N.Y. 2018); *KM Enters. Inc.*, 725 F.3d at 725. The question is not whether Section 27 limits venue for alien defendants, but whether a plaintiff can avail themselves

---

[4] "In sum, while we find the language of Section 12 too ambiguous to rely on the 'plain meaning' rationale endorsed by the Second and D.C. Circuits, the practical effects of decoupling the clauses of Section 12 are ultimately too bizarre and contrary to Congress's apparent intent for us to endorse. Thus, we hold that Section 12 must be read as a package deal. To avail oneself of the privilege of nationwide service of process, a plaintiff must satisfy the venue provisions of Section 12's first clause. If she wishes to establish venue exclusively through Section 1391, she must establish personal jurisdiction some other way." 725 F.3d at 730.

of one portion of a statute for one purpose (here, to avail themselves of a service of process provision), while being unable to satisfy the threshold requirements of that statute. That is, the Court's reading of Section 27 is not a limitation on the venue provision of Section 1391, but rather an acknowledgment that Section 27 offers a special service of process provision "in such cases" as those brought under the statute's requirements.[5]

The Court notes that Congress has written a specific provision related to the unique treatment of alien defendants in the context of determining proper venue. Congress could very well have written a similar provision establishing unique treatment of alien defendants in the context of personal jurisdiction. Congress has not done so. Simply because alien defendants are treated in a unique manner in one area of the law, the Court will not extrapolate that a unique exception should be read in to other statutes. The Court will not, in essence, rewrite Section 27, or create new law for the special case of alien defendants as to personal jurisdiction.

Thus, the Court finds that Plaintiffs cannot apply the service of process provision of Section 27 unless they first establish that venue is proper under the venue provision of Section 27. Plaintiffs have not established that this District constitutes proper venue under Section 27. The Court determines, therefore, that Plaintiffs cannot assert personal jurisdiction over Defendants pursuant to Section 27.

---

[5] Plaintiffs do not present a convincing argument for their broad reading of Section 27. *Busch v. Buchman, Buchman & O'Brien, Law Firm*, 11 F.3d 1255, 1257 (5th Cir. 1994), cited by Plaintiffs, held that once a case was filed in an appropriate venue under a statute, that same statue gave the district court authority to serve defendants nationwide. This conclusion, however, supports Defendants', as well as the Court's, reading of Section 27.

2. Federal Rule of Civil Procedure 4(k)(2)

At the Hearing, Plaintiffs introduced an argument for personal jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2), which was neither pled in their Amended Complaint nor raised in the original briefing on the Motion.[6]

"Rule 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2014).

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

FED. R. CIV. P. 4(k)(2). This Rule was passed to fill a specific gap in the jurisdiction of federal courts in cases arising under federal law:

> [W]hile a defendant may have sufficient contacts with the United States as a whole to satisfy due process concerns, if she had insufficient contacts with any single state, she would not be amenable to service by a federal court sitting in that state. . . . Rule 4(k)(2) was adopted in response to *this* problem of a gap in the courts' jurisdiction. . . .

*World Tanker Carriers Corp. v. MV Ya Mawlaya*, 99 F.3d 717, 721–22 (5th Cir. 1996).

There is no dispute, and the Court so finds, the Amended Complaint asserts claims under federal law, and Defendants have minimum contacts with the United States. *See* Dkts. 21 at 33–

---

[6] The Court permitted supplemental briefing on the limited issue of the applicability of Rule 4(k)(2) as a basis for establishing personal jurisdiction. *See* Dkt. 37 at 1; Dkts. 38, 39, 40, 43.

36; 24 at 28.[7] The only disputed element is whether Defendants are subject to the jurisdiction of the courts of general jurisdiction of any state.

Plaintiffs have the initial burden to plead and prove contacts with the United States and Rule 4(k)(2)'s applicability but are not required to negate jurisdiction in every state. *See Adams*, 364 F.3d at 651. The Fifth Circuit has held that "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2)." *Id*. Defendants argue Rule 4(k)(2) does not apply because they concede they are subject to personal jurisdiction in New York under the New York long-arm statute (N.Y. CPLR 302(a)), and because they consent to personal jurisdiction in New York state courts. *See* Dkt. 39 at 10, 16–22. Plaintiffs respond that because they have not asserted Defendant GDS is subject to personal jurisdiction in New York, there is nothing for GDS to concede. *See* Dkt. 40 at 5.

Plaintiffs further argue the Fifth Circuit has determined that when the defendant contends there is jurisdiction in another state and the plaintiff asserts there is not, the defendant must not merely name a state in which suit could be brought, or consent to jurisdiction, but must prove the other state has jurisdiction. *See* Dkt.40 at 3, (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018)). *Nagravision*, however, did not involve a disagreement regarding an initial dispute about jurisdiction, but rather, addressed the "very specific question of who bears the burden of proof when a Rule 60(b)(4) challenge is made solely on the argument that the requirement of Rule 4(k)(2)(A)—that defendant is not subject to jurisdiction in any state's courts of general jurisdiction—is not met." *Id*. As the posture of the present Motion differs, the "very specific question" addressed in *Nagravision* regarding a defendant's burden in a Rule 60(b)(4)

---

[7] Defendants have a number of contacts with the United States, including Defendant GDS's listing on the NASDAQ exchange. *See* Dkt. 21 at 2. Registering and trading stock on the NASDAQ has been found to be sufficient to establish minimum contacts with the United States. *See Landry v. Price Waterhouse Chartered Accountants*, 715 F. Supp. 98, 101 (S.D.N.Y. 1989).

challenge to void a default judgement is not decisive regarding the nature of what Defendants must demonstrate here regarding the identification of a state where courts of general jurisdiction could properly exercise jurisdiction over them at the initial stage. Importantly, Plaintiffs bear the ultimate burden of proof to establish personal jurisdiction. *Nagravision*, 882 F.3d at 498

As the Fifth Circuit has not made a decisive finding regarding consent or the precise nature of what a defendant must demonstrate in identifying a state where suit could have been brought, the Court considers other rulings within the Circuit. In *Research in Motion Ltd. v. InPro II Licensing, S.A.R.L.*, a Northern District of Texas Court relied on the defendant's identification of Delaware as another forum where the suit may proceed for its determination that Rule 4(k)(2) did not apply. No. 303-cv-2669B, 2005 WL 659022 at *5 (N.D. Tex. Mar. 18, 2005).[8] In *Freescale Semiconductor, Inc. v. AmTran Tech. Co. Ltd.*, a Western District of Texas Court found Rule 4(k)(2) did not apply "because [the defendant] ha[d] explicitly stated that its contacts and conduct in California render [the defendant] amendable to personal jurisdiction in California." No. A-12-cv-644-LY, 2014 WL 1603665 at *3 (W.D. Tex. Mar. 19, 2014) (noting, without making an independent analysis of California's jurisdiction, that the concession appeared to have merit beyond mere litigation-strategy gamesmanship).

Plaintiffs cite two cases outside the Fifth Circuit for the proposition that a defendant's voluntary consent is insufficient to preclude application of Rule 4(k)(2). *See* Dkt. 40 at 4. In *Sunrise Techs., Inc. v. SELC Ireland, Ltd.*, a Massachusetts District Court found the defendant's "voluntary consent to jurisdiction in North Carolina [was] insufficient to defeat Rule 4(k)(2)

---

[8] Plaintiffs incorrectly state that the *Research in Motion* decision analyzed whether jurisdiction was proper even though the defendant conceded there was jurisdiction. Plaintiffs state that the court indicated jurisdiction was proper in Delaware because the defendant was incorporated there. *See* Dkt. 40 at 4. The court in *Research in Motion*, however, noted that the *plaintiff* was incorporated in Delaware, not the defendant—a Luxembourg company. *See* 2005 WL 659022 at *5, n. 8.

13

because the defendant [] failed to establish an independent basis for jurisdiction in that forum." No. CV 15-11546-NMG, 2016 WL 3360418, at *5 (D. Mass. June 14, 2016*), report and recommendation adopted*, No. CV 15-11546-NMG, 2016 WL 4007078 (D. Mass. July 25, 2016). In *Am. Wave Machines, Inc. v. Surf Lagoons, Inc.*, a Southern District of California Court found the defendant's argument that New Hampshire was "the more logical forum" due to a potential witness being located there, combined with a failure to provide any evidence as to why the defendant was subject to personal jurisdiction in New Hampshire, was insufficient to avoid Rule 4(k)(2). No. 13-CV-3204-CAB NLS, 2014 WL 10475281, at *8 (S.D. Cal. Nov. 12, 2014).

Recognizing the Fifth Circuit has yet to make a binding determination on this specific area of the law, and that district courts have inconsistently analyzed the degree to which a defendant must make a showing of jurisdiction in another state beyond consent, the Court gives great weight to the language in *Adams*, that "so long as a defendant does not concede to jurisdiction in another state, a court may use Rule 4(k)(2) to confer jurisdiction." *Adams*, 364 F.3d at 651. For this determination, the Fifth Circuit cited the Seventh Circuit's holding, that if a "defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *ISI Int'l, Inc. v. Borden Ladner*, 256 F.3d 548, 552 (7th Cir. 2001). In that same opinion, cited as persuasive by the Fifth Circuit, the Seventh Circuit determined, "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed." *Id.*

The Court, therefore, finds the interpretation that Rule 4(k)(2) is inapplicable when the defendant concedes to suit in another state is consistent with the goals of Rule 4(k)(2)—to provide a final option for suit when all other forums fail. Further, Defendants do far more than simply consent to New York jurisdiction. Defendants provide substantial argument that Defendants are

14

subject to specific personal jurisdiction in New York state courts. *See* Dkt. 39 at 16–22. Even though Defendants present argument, the burden of proof to establish personal jurisdiction over the defendant ultimately falls upon the plaintiff. *Nagravision*, 882 F.3d at 498. Hence, the Court finds that because Defendants have conceded their conduct and contacts in New York render them amendable to personal jurisdiction in New York, and consent to personal jurisdiction in New York, Rule 4(k)(2) cannot apply.[9]

Alternatively, the Court considers Defendants' argument that Rule 4(k)(2) does not apply where a situation-specific federal statute confers personal jurisdiction over Defendants in at least one other federal court. *See* Dkt. 39 at 10. In *U.S. v. Swiss Am. Bank, Ltd.*, the First Circuit held:

> [A] plaintiff who seeks to invoke Rule 4(k)(2) must make a prima facie case for the applicability of the rule. This includes a tripartite showing (1) that the claim asserted arises under federal law, (2) that personal jurisdiction is not available under any situation-specific federal statute, and (3) that the putative defendant's contacts with the nation as a whole suffice to satisfy the applicable constitutional requirements.

191 F.3d 30, 41 (1st Cir. 1999). Defendants argue Rule 4(k)(2) does not apply here because Section 27 confers personal jurisdiction over Defendants in the Southern District of New York. *See* Dkt. 39 at 10. The Fifth Circuit has not made an explicit ruling on the requirement for a plaintiff to show that personal jurisdiction is not available under any situation-specific federal statute. However, the Fifth Circuit has favorably cited *U.S. v. Swiss Am. Bank, Ltd.,* for its analysis of Rule 4(k)(2)'s requirements. *See Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d

---

[9] Plaintiffs frame their argument from a policy perspective, contending that allowing a defendant to defeat Rule 4(k)(2) by simply naming a state where it consents to jurisdiction would allow "manipulation" and selection of the jurisdiction it finds most favorable. *See* Dkt. 40 at 3. Plaintiffs contend this is inconsistent with prior Congressional action to "protect domestic defendants from inconvenient venues while showing no such concern for foreign defendants." *See id*. As noted by the Fifth Circuit, and referenced supra, Rule 4(k)(2) was not passed to provide plaintiffs with additional freedom to sue alien defendants in any forum of their choosing, but rather to fill a specific gap in a jurisdiction where a defendant "would not be amenable to service by a federal court" in any state. *World Tanker*, 99 F.3d at 721–22. Furthermore, there is no indication or supported allegation in this matter of any manipulation on the part of Defendants.

15

413, 420 (5th Cir. 2001) (analyzing the Rule 4(k)(2) requirement to consider contacts with the United States for due process concerns).

Additionally, courts in the Fifth Circuit and elsewhere have cited the First Circuit's interpretation of Rule 4(k)(2).[10] *See, e.g., Aqua Shield, Inc. v. Inter Pool Cover Team*, No. 05-cv-4880(CBA), 2007 WL 4326793 at *8 (E.D.N.Y. Dec 7, 2007); *In re Vitamins Antitrust Litig.*, 94 F. Supp. 2d 26, 34-35 (D.D.C. 2000); *Johnson v. PPI Tech. Servs., L.P.*, Nos. 11-2773, 12-1534, 2013 WL 2404237 at *6 (E.D. La. May 31, 2013); *Johnson v. PPI Tech. Servs., L.P.*, 926 F. Supp. 2d 873, 883 (E.D. La. 2013); *Porina v. Marward Shipping Co. Ltd.*, No. 05CIV.5621(RPP), 2006 WL 2465819 at *4 (S.D.N.Y. Aug. 24. 2006) *aff'd* 521 F.3d 122 (2d Cir. 2008); *Steinberg v. A Analyst Ltd.*, No. 04-60898-CIV, 2009 WL 838989 at *7 (S.D. Fla. Mar. 26, 2009). Though Plaintiffs present non-binding decisions from district courts finding Rule 4(k)(2) applies regardless of a situation-specific federal statute which grants personal jurisdiction elsewhere (*see, e.g., Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484, 488 (D. Mass. 1996)), the Court finds the First Circuit's analysis persuasive, particularly given the previously discussed function of Rule 4(k)(2) as a gap-filler for cases in which personal jurisdiction was otherwise impossible.[11]

---

[10] Of further note, in *Adams*, the Fifth Circuit case outlining interpretation of Rule 4(k)(2), the Fifth Circuit adopted the Seventh Circuit's understanding of Rule 4(k)(2) that a plaintiff should not have to conduct an "analysis of the existence of *vel non* of jurisdiction in all fifty states." The Seventh Circuit case cited for this proposition, *ISI Int'l., Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548 (7th Cir.2001), built its interpretation of Rule 4(k)(2), in part, on *U.S. v. Swiss Am. Bank, Ltd*. *See ISI*, 256 F.3d at 552. The legacy of positive citations to the First Circuit's interpretation of Rule 4(k)(2) from the Seventh Circuit to the Fifth Circuit lends additional credence to its applicability in the present matter.

[11] Plaintiffs argue *Swiss Am.* "only meant the plaintiff must show 'personal jurisdiction is not available under any situation-specific statute' *in the district in which the plaintiff sued*.'" Dkt. 40 at 7. However, Plaintiffs' interpretation that *Swiss Am.*, requires a showing of lack of personal jurisdiction in the *federal district* which plaintiff sued merely identifies a different court of limited jurisdiction the plaintiff must show lacks jurisdiction. Thus, under *Swiss Am.*, application of Rule 4(k)(2) requires more than simply a showing that no state court has jurisdiction; rather, it would require at least a showing that one court of limited jurisdiction, namely the federal district in which the case was brought, did not have personal jurisdiction pursuant to a situation-specific federal statute. For purely practical purposes, Plaintiffs' proposed interpretation has merit—courts need not consider additional methods of finding jurisdiction if jurisdiction is already proper pursuant to a situation-specific federal statute. But, as a principled interpretation of Rule 4(k)(2) and *Swiss Am.*, Plaintiffs' contention is a distinction without a difference.

Plaintiffs acknowledge Section 27 is a situation-specific federal statute granting jurisdiction to other courts. *See* Dkt. 40 at 8. Defendants have extensively demonstrated they are subject to venue and personal jurisdiction in the Southern District of New York pursuant to Section 27. *See* Dkt. 24 at 27–28; Dkt. 39 at 13–15. Plaintiffs do not contest the assertion that Section 27 would grant jurisdiction in the Southern District of New York. As Plaintiffs have not shown that personal jurisdiction is not available under a situation-specific federal statute, the Court finds an additional and alternative basis for its determination that Rule 4(k)(2) does not apply in this matter.

As this Court lacks jurisdiction, it will not reach Defendants' assertion that Plaintiffs have failed to state a claim.

**C. Transfer**

At the Hearing, both parties requested the case be transferred rather than dismissed if the Court granted the Motion based on a finding of improper venue and/or jurisdiction. "The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). Section 1406 allows for dismissal, "or if it be in the interest of justice, transfer [of] such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Defendants request the case be transferred to the Southern District of New York ("SDNY") and Plaintiffs request it be transferred to the Central District of California ("CDC").

Plaintiffs argue the CDC is a proper venue because every district is proper. *See* Dkt. 31 at 28. As previously discussed, the Court finds that every district is not proper. *See supra*. Having submitted no substantive basis for establishing this case could have been brought in California, the Court will not consider whether transfer to CDC is appropriate.

17

Defendants contend this case could have been filed in the SDNY pursuant to Section 27 because of "GDS's NASDAQ listing; GDS's largest shareholders being based in New York; GDS executives' quarterly trips to New York to meet with investors and analysts to discuss its business and results; the broad dissemination of the allegedly fraudulent SEC Form 20-F annual reports and their filing with the SEC's New York office; and the participation of New York-based analysts in the August 14, 2018 earnings call." *See* Dkt. 39 at 15. Plaintiffs do not contest that the venue provision of Section 27 applies in the SDNY. The Court thus finds that venue under Section 27 is proper in the SDNY. As the Court finds Section 27's venue provision is met and Defendants have sufficient contacts with the United States, Plaintiffs could also avail themselves of Section 27's service of process clause to establish personal jurisdiction in the SDNY. Therefore, this case could have been filed in the SDNY. Because both parties have requested transfer over dismissal, the interests of justice will be served by transferring this case to the Southern District of New York, where it could initially have been brought.

## IV. CONCLUSION

Therefore, upon consideration, Defendants' Motion to Dismiss the Amended Complaint and Alternatively, to Transfer Venue to the Southern District of New York, and Memorandum of Law in Support (Dkt. 24) is **GRANTED** to the extent described herein. The Clerk of Court is directed to **TRANSFER** the case to the Southern District of New York in accordance with 28 U.S.C. § 1406(a).

**So ORDERED and SIGNED this 30th day of September, 2019.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE